IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CRAIG ARNOLD SCOTT,** * | |
| Petitioner, * | |
| v. * | Criminal No.: RWT-04-235 |
| * | Civil No.: RWT 10-3528 |
| **UNITED STATES OF AMERICA,** * | |
| Respondent. * | |

## MEMORANDUM OPINION

On December 17, 2010, Craig Scott ("Scott") filed a petition to vacate, set aside, or correct his sentence for three drug-related convictions.[1] Scott attacks his convictions on a number of grounds, including: (1) the sufficiency of the evidence supporting his convictions, (2) the admissibility of testimony by two police officer expert witnesses, (3) the government's decision to call a witness it allegedly knew would not testify, and (4) the admissibility of a co-defendant's prior conviction for impeachment. ECF No. 1439. Each of these claims must fail, however, because Scott neglected to raise them on direct appeal or because they were already litigated on direct appeal.

## BACKGROUND

A law enforcement investigation in 2004 revealed an "extensive drug-trafficking organization that operated in Maryland, the District of Columbia, New York, and elsewhere," leading to the "arrest of over thirty individuals." *United States v. Johnson*, 587 F.3d 625, 628-29

---

[1] Scott's petition appears to be printed on a standard form for a 28 U.S.C. § 2254 petition. Although the filing does not expressly cite 28 U.S.C. § 2255, and although it names the warden of Scott's correctional institution and the Attorney General of the State of Maryland as defendants, given the nature of the petition's claims attacking Scott's convictions in this Court, his petition for relief will be construed as a petition under 28 U.S.C. § 2255.

(4th Cir. 2009). "The major figures in this organization included Paulette Martin, Gwendolyn Levi, and Moises Uriarte." *Id.* at 628. Gwendolyn Levi ("Levi"), Scott's mother, was one of the heroin suppliers in the organization, and telephone call intercepts showed that Scott "helped Levi process and distribute heroin." *Id.* at 629. On these phone calls, Scott and Levi discussed, among other things, Scott's "heroin customers [that] were 'on hold,'" Scott's retrieval of heroin from Levi's basement, and Scott's packaging of heroin for distribution. *Id.*

In 2005, Scott was tried in this Court together with two co-defendants, Donna Johnson ("Johnson") and John Martin ("Martin"), and "[o]n December 22, 2005, a jury convicted all three . . . of conspiring to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 (2006)." *Id.* The jury also convicted Scott of using "a communications device to facilitate narcotics trafficking in violation of 21 U.S.C. § 843(b) and possession with intent to distribute heroin in violation of 21 U.S.C. § 841." *Id.* at 629-30. On April 28, 2006, this Court sentenced Scott to 150 months imprisonment and five years of supervised release. ECF No. 822.

Scott and his co-defendants appealed their convictions to the Court of Appeals for the Fourth Circuit, raising a number of issues, including that this Court erred in not granting a mistrial after the government called Levi to the stand and she refused to testify. *Johnson*, 587 F.3d at 630. Scott's co-defendants raised certain claims individually, with Johnson attacking "the sufficiency of the evidence supporting her . . . convictions" and Martin challenging the admission of expert testimony by two police officers and the admission of a prior conviction for impeachment. *Id.* at 630, 633.[2] Scott, however, did not raise any individual claims on appeal.

---

[2] Martin "also raise[d] two sentencing issues" on appeal. *Johnson*, 587 F.3d at 630.

*Id.* at 630. The Fourth Circuit rejected all of their claims and affirmed the convictions of Scott and his co-defendants on December 2, 2009. *Id.* at 628, 640.

Scott filed his petition collaterally attacking his convictions and sentence, which this Court construes as a petition under 28 U.S.C. § 2255, on December 17, 2010. ECF No. 1439. The government responded in opposition on February 17, 2011. ECF No. 1447.

## ANALYSIS

Under 28 U.S.C. § 2255, a federal prisoner may file a petition to vacate, set aside, or correct a sentence. 28 U.S.C. § 2255. Generally, a petitioner that does not raise issues on direct appeal cannot raise them in a § 2255 collateral attack, as "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). "In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant [1] must show cause and actual prejudice resulting from the errors of which he complains," *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999), or he [2] must show "actual innocence," *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010).

Under the cause and prejudice exception to the bar against raising an issue not presented on direct appeal, "[t]he existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493; *see also Coleman v Thompson*, 501 U.S. 722, 753 (1991) ("For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by officials' . . . made compliance impracticable, would constitute cause under this standard.'") (internal citations omitted). To show "actual prejudice" under this first exception, the petitioner must show that the alleged

3

error(s) at trial "worked to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170; *see also Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (citing same standard).

Under the "actual innocence" exception to the procedural default bar, "a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Pettiford*, 612 F.3d at 282 (internal quotation marks and citation omitted). "Furthermore, the 'movant must show actual innocence by clear and convincing evidence.'" *Id.* (internal citations omitted).

In addition to the procedural default of claims not raised on direct appeal, a petitioner may not use a § 2255 petition to re-litigate questions previously raised and considered on direct appeal. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) ("[Petitioner] will not be allowed to recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]."). However, should a petitioner show "an intervening change in the law" since the appeal, further review might be required. *Davis v. United States*, 417 U.S. 333, 342 (1974) (internal citations omitted).

Scott seeks relief from his sentence because, he argues, (1) the evidence supporting his convictions was insufficient, (2) this Court impermissibly admitted testimony by two police officer expert witnesses, (3) the government called a witness to testify that it allegedly knew would not testify, and (4) a prior conviction of co-defendant Martin should not have been admitted for impeachment. ECF No. 1439. This Court is precluded from considering the merits of any of these claims, and they will each be denied. Scott's first, second, and fourth claims are procedurally defaulted, as Scott did not raise them before the Fourth Circuit, and he fails to show either (1) cause and actual prejudice or (2) actual innocence sufficient to overcome the

4

procedural default bar. Scott's third claim fails because it was previously presented to and denied by the Fourth Circuit on direct appeal, and Scott alleges no intervening change in the law since that appeal.

I.  **Sufficiency of the Evidence**

In Scott's first claim, he asserts that "[t]he weight of credible evidence in this case does not support a finding of guilty." ECF No. 1439 at 3. He argues that he "had only a passing acquaintance with either of [his co-defendants] as friends of [his] mother's," and that there was more evidence against his co-defendants than him. ECF No. 1439 at 3. Scott contends that the "sum total of the evidence against" him consisted of telephone conversation intercepts and the impermissible testimony of two police officers translating "drug trafficking 'lingo'" from the calls. ECF No. 1439 at 3-4.

This claim fails, however, because it is procedurally defaulted. Scott did not challenge the sufficiency of the evidence against him on direct appeal, and he does not show sufficient cause and prejudice to overcome this procedural bar. Scott asserts no reason why he did not raise this issue before the Fourth Circuit, and the fact that one of his co-defendants, Johnson, did raise the issue there undermines any potential argument that an external factor to his defense prevented him from making such an argument. Scott also cannot avail himself of the actual innocence exception, as he offers nothing to "demonstrate actual factual innocence of . . . [his] conviction[s]." *Pettiford*, 612 F.3d at 282.

II. **Testimony by Two Police Officer Expert Witnesses**

Scott's second basis for attacking his convictions is that the testimony of police officers Sakala and Eveler should not have been admitted at trial. ECF No. 1439 at 4. These officers testified as expert witnesses "on the subject of drug trafficking," as they both "had extensive

5

training and experience" in that area. *Johnson*, 587 F.3d at 633-34. They assisted the jury in interpreting telephone conversation recordings, "testif[ying] that several seemingly innocuous terms used in these calls, such as 'tickets' and 'T-shirts,' were actually code words for narcotics." *Id.* at 634. Scott argues that their testimony should not have been allowed, asserting that "[t]here is no judicially recognized 'expertise' as a 'drug code interpreter,'" and that "[t]he complete testimony of Officer Evel[e]r was speculation, without a proper foundation." ECF No. 1439 at 4.

Like the first claim, this one fails because Scott had the opportunity to raise it on direct appeal and failed to do so. Scott offers no explanation for why he neglected to make this argument before the Fourth Circuit, and thus he cannot satisfy the cause and prejudice exception to the bar against this Court considering this issue. In fact, one of Scott's co-defendants, Martin, did challenge on direct appeal the admission of the police officers' testimony, arguing that Martin's "Sixth Amendment right 'to be confronted with the witnesses against him'" was violated because of the witnesses' reliance "in part on testimonial statements from unidentified declarants." *Johnson*, 587 F.3d at 633. Scott also cannot invoke the actual innocence exception for considering this claim because he does nothing to establish the "actual factual innocence" of his convictions. *Pettiford*, 612 F.3d at 282.

### III. The Government's Decision to Call Gwendolyn Levi to Testify

While the first two claims are procedurally defaulted because of Scott's failure to raise them on direct appeal, the third claim is barred from consideration because Scott already litigated it on direct appeal. Scott's third ground for attacking his convictions is that the government called Gwendolyn Levi to the stand knowing she would not testify, and that this Court did not address that action properly. ECF No. 1439 at 4-5. Levi had "entered into a plea agreement with

6

the government that required her to testify at trial," but the night before her scheduled testimony, she "met with prosecutors and informed them that she no longer intended to testify." *Johnson*, 587 F.3d at 630. By the end of the meeting, however, she decided to reconsider that decision, and the government called her the following day to testify as scheduled. *Id.* "She took the oath and answered a few questions about her background," but then "refused to answer any more." *Id.* This Court then excused the jurors, and Levi initially "stated that she simply did not wish to testify and denied that she was concerned about incriminating herself or her son [Scott]," before asserting that in fact "she did not wish to testify because of her privilege against self-incrimination." *Id.* The government "obtained an immunity order to compel her to testify," Levi continued to refuse, and this Court held her in contempt of court. *Id.* This Court later instructed the jury not to make any inferences concerning Levi's decision not to testify further, and it denied a motion for a mistrial by the defendants. *Id.* at 630-31. Scott asserts that this Court erred in its treatment of this series of events, and that the government should not have been permitted to call Levi to the stand knowing she would not testify. ECF No. 1439 at 4-5.

This Court is restricted from considering this third claim because, unlike the first two claims, Scott has already raised and litigated this issue on direct appeal in *United States v. Johnson*, 587 F.3d 625, 630-31 (4th Cir. 2009). The Fourth Circuit affirmed this Court's decision not to grant a mistrial, citing "two circumstances in which a government witness's invocation of a testimonial privilege may constitute reversible error," and finding that neither circumstance was present in this case. *Johnson*, 587 F.3d at 631. Scott does not cite any "intervening change in the law" since his appeal, *Davis*, 417 U.S. at 342 (internal citations omitted), and thus because Scott has already argued this issue before the Fourth Circuit, this claim fails.

7

**IV.     The Admission of a Prior Conviction of Co-Defendant Martin for Impeachment**

In Scott's fourth attack on his convictions, he argues that this Court improperly admitted one of Martin's past convictions for impeachment. ECF No. 1439 at 5. On direct appeal, Martin argued that this Court "abused its discretion by admitting his 1980 conviction for armed robbery for impeachment purposes." *Johnson*, 587 F.3d at 636. This appears to be the same claim that Scott makes here. The government, in its opposition to Scott's petition, notes that Scott's standing to contest the admission of this conviction to impeach Martin is "highly suspect," ECF No. 1447 at 12, but even without reaching this issue, Scott is procedurally defaulted from raising it here, as he neglected to assert it on direct appeal. Like the first two claims, Scott's fourth claim does not satisfy the cause and prejudice exception or the actual innocence exception to this procedural bar. Scott offers no reason for his failure to argue this issue on direct appeal, and he offers nothing to "demonstrate [his] actual factual innocence." *Pettiford*, 612 F.3d at 282. Accordingly, this Court must deny each of Scott's four arguments for post-conviction relief.

**CERTIFICATE OF APPEALABILITY**

Scott may not appeal this Court's order denying him relief under 28 U.S.C. § 2255 unless it issues a certificate of appealability. *United States v. Hardy*, 227 F. App'x 272, 273 (4th Cir. 2007). A certificate of appealability will only issue if Scott has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); *Hardy*, 227 F. App'x at 273. A petitioner "satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Riley*, 322 F. App'x 296, 297 (4th Cir. 2009). Scott has failed to raise a cognizable § 2255 claim

in which a reasonable jurist could find merit, and thus no certificate of appealability shall issue.

## CONCLUSION

For the foregoing reasons, Scott's petition will be denied and no certificate of appealability shall issue. A separate Order follows.


Date: February 19, 2014                                    /s/
                                              ROGER W. TITUS
                                         UNITED STATES DISTRICT JUDGE